Gulf, Colorado & Santa Fe Railway Company v. J. M. Miller.

Decided June 28, 1902.

1.—Verdict—Evidence—Practice on Appeal.

Where the verdict is against the manifest weight and great preponderance of the evidence, the appellate court will reverse the judgment rendered thereon.

2.—Contributory Negligence—Going on Railroad Track.

Where one goes, as a licensee, upon the track of a railroad at a point where there is danger, it is his duty to use his senses of sight and hearing, and the consequences of a failure to do so are not relieved by the fact of concurring negligence on the part of the servants of the railway company. See evidence of a failure by plaintiff to look and listen held to show such contributory negligence as would, as a matter of law, bar a recovery.

3.—Same—Discovered Peril—Pleading.

See pleading which, had there been exception duly taken thereto, would have been insufficient to present a plea of discovered peril for want of affirmative allegation.

4.—Discovered Peril—Evidence Insufficient.

Where plaintiff, injured by being struck by an engine while walking on the railroad track, seeks to recover on the theory of discovered peril, it must be shown that those operating the engine saw plaintiff's peril in time to have avoided the injury, and evidence merely that they could have seen it is not sufficient.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *Ballinger Mills,* for appellant.

*R. H. West* and *Stuart & Bell,* for appellee.

CONNER, CHIEF JUSTICE.—This is a damage suit for personal injuries inflicted upon appellee by a passing engine on appellant's main track extending through the town of Dougherty, Indian Territory. The main line extends in the general direction of north and south, and parallel thereto on either side are certain switch tracks, over one of which appellee approached the main track. There was evidence tending to show that the place of the accident was upon a part of appellant's tracks and grounds which for several years prior thereto had been used as a passway by citizens living on opposite sides of the town, and that the operatives of the engine inflicting the injury were guilty of negligence charged in running rapidly, without keeping a proper lookout, and without sounding either bell or whistle.

It was alleged in defense of the action that appellee was negligent in entering upon defendant's track, and in failing to look or listen for the approach of the engine and cars, and in failing to exercise any care and caution for his own safety, and that but for such negligence the accident would not have occurred.

The verdict of the jury in appellee's favor on the issue of contributory negligence is attacked as "against the manifest weight and great preponderance of the evidence," and after a careful consideration of the evidence and of the authorities pressed upon us in appellee's brief, we feel constrained to sustain the assignments of error presenting this question.

In view of another trial we do not care to discuss at length the testimony, nor will any useful purpose be served by setting it out in full. We deem it sufficient to say that as presented in the record before us the evidence as a whole shows that appellee approached and got upon the main track from the east, walking briskly; that in doing so he crossed a switch track east of the main track in front of a standing engine "popping off" steam; that at all times after passing the side track the view to the north was unobstructed, notwithstanding which appellee did not stop, look, or listen for a train from that direction until after he was upon the main track, whereupon he turned south, and when about half turned, without stopping, turned his head and eyes so that not exceeding forty feet of the main line north was viewed by him; and then, briskly walking, proceeded south some sixty feet along the track, when he was knocked off by the rapidly approaching engine from the north.

In illustration of this conclusion we quote the following from appellee's testimony on cross-examination: "I crossed over (the switch

track) towards the main track about ten feet south of the cow-catcher. Yes, sir; I kept right straight on till I got on the main track. I angled a little down. As to whether I looked up on the main track, I said I don't know, as I scarcely stopped, but I looked north up towards the depot, and looked south. I was on the main track when I looked, something near the center of the main track. I didn't walk upon the main track and stand there at all. As to whether I turned my head and looked up to the right, my breast was kinder towards the southwest at that time. I don't know whether I looked as far as the depot; I saw thirty or forty steps that way. I don't know whether there was one or two engines back of the thirty or forty steps. I just saw somewhere along about that distance. It is a very straight track. As to what limited my vision when I threw my eye up the track, will say I didn't stop. I suppose there is a way, if I look in one direction, even for a second, to limit my vision to thirty or forty steps. I don't know, as I did merely try to see whether there was a train in thirty or forty steps. I was looking for the passenger train from the south; as to what I was looking for, when a man hears an engine puffing and blowing he naturally looks up. No, sir; I did not look up towards the depot to see if there was an engine coming from towards the depot; wasn't expecting anything from that direction. I turned my head because there was an engine standing there. As to whether I looked up the track to see if any train was coming, will say I don't know as I did. I never looked for a train towards the depot; I never expected a train from that direction. I might see thirty or forty steps looking towards the depot, and I might see further. Yes, sir; the track looks straight that way. As to what there was to keep me from seeing any distance up the track beyond the depot, even when I came on the main track and looked up the main track north, will say because I didn't stop and stand and look; if I hadn't watched where I was walking I would have stumbled over the ties and fell off."

Excluding from our consideration the testimony denied by appellee, to the effect that he declared immediately after the accident that he did not look for a train from the direction of the depot, and that he "didn't know whatever caused him to do such a trick as that," appellee's own rendition of his action seems to strongly show a failure of a full discharge of his duty. It may be conceded that appellee was not a trespasser, and that after starting south appellee was guilty of no such negligence as will relieve appellant from its negligence in failing to keep proper lookout and to give the required signals of warning, yet appellee's right to the use of the track as licensee was not greater than that of appellant; on the contrary it was subordinate, and for the preservation of human life and property generally, as well as for his own protection, it was appellee's duty before going into and upon dangerous ground to use his senses of sight and hearing. The consequence of a failure to do so is not relieved by the fact of concurring negligence on the part of another. The doctrine is so well established that authorities

need scarcely be cited, but see Railway v. Houston, 95 United States, 702; Railway v. Bracken, 59 Texas, 73.

We can find no cause for the injury intervening between the indicated negligence of appellant's servants and of appellee, as is insisted. Had either party exercised the proper care, no injury would probably have resulted. In view of another trial we also add that it would seem that appellant was entitled to have submitted to the jury special charge number 5, applying the law of contributory negligence to the particular circumstances in evidence, notwithstanding the submission of the issue by the court in general terms. Railway v. Mangham, 4 Texas Ct. Rep., 682.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

In view of the differences that have arisen between us on the motion for rehearing, it will perhaps not be inappropriate to give brief expression to the view of the majority in overruling the motion.

While certain expressions or sentences may be found in the testimony which, if detached from the context, tend to support appellee's theory that he was not guilty of contributory neglilgence, and therefore may be said to support the verdict, yet all such testimony was carefully considered on the original hearing, and we then all agreed that the testimony as a whole failed to sufficiently support the verdict in appellee's favor on the issue of contributory neglilgence. The entire evidence has again been carefully considered and reviewed, and the majority retain the conclusion originally expressed, that the verdict on this issue is against the manifest weight and great preponderance of the evidence. This being true, we then and now conceive it to be our duty to reverse the judgment and remand the cause. Railway v. Choate, 91 Texas, 410; Railway v. Hamilton, 17 Texas Civ. App., 82. In this connection we desire also to say that we regard the case before us as plainly distinguishable from the cases of Railway v. Fuller, 13 Texas Civil Appeals, 151, 36 Southwestern Reporter, 319, and Railway v. Cardena, 22 Texas Civil Appeals, 300, 54 Southwestern Reporter, 312, so earnestly pressed upon us in the motion for rehearing. In the first case Mrs. Fuller testified that before going upon the public crossing upon which she was hurt by a rapidly approaching train that gave no warning, "she looked up and down it, and saw no engine, and heard no noise from one." In the Cardena case the injured party did not testify, having been killed, and in support of the judgment the court indulged certain inferences that are excluded by appellee's testimony in this case. It affirmatively appears from appellee's testimony, as set out in our original opinion, that before going upon the track he did not look up and down it to see if there was an approaching train, and in explanation of his failure to do so he entirely fails to state any such

facts as were inferred by the court from the evidence in the case of Railway v. Cardena. He merely says, in substance, that he was not "expecting a train" from the direction of approaching danger. With engines "popping off steam" on side tracks on either side of the track upon which appellee began to walk, and with the knowledge that must be imputed to him that a train had the right to approach and was liable to approach from such direction, it would seem that it was appellee's duty to have looked or listened, or give some reasonable excuse why he did not do so. Railway v. Hamilton, 17 Texas Civ. App., supra; Railway v. Mars, 4 Texas Civ. App., 318; Railway v. Dean, 73 Texas, 76.

It is now very ugently insisted, however, that the judgment should be supported on the ground that there is evidence that the operatives of the engine discovered appellee's danger in time by the use of the means at their command to have avoided the injury. This subject was not stressed on the original submission, being but very briefly referred to in appellee's brief. A consideration of the record renders it perfectly apparent that this issue was not made prominent on the trial. No request for the submission of such issue was made by appellee, and the court in fact gave no affirmative charge on the subject. The evidence was sharply conflicting as to whether appellee was, as alleged, struck on a private footpath or crossing in common use by the citizens of Dougherty, and the court merely instructed the jury that unless they so found, they would find for the defendant, "unless you find that they (the operatives of the engine) saw plaintiff on the track and realized that he was in peril and would not likely leave the track before he would be struck by the engine, and unless they could by the exercise of ordinary care after so discovering plaintiff and his peril, if they did so, by the use of the means at their command, have avoided injuring plaintiff."

Indeed, it may be well questioned whether appellee's petition sufficiently presents the issue. The full force of the allegations is to be found in the following quotation: "That the agents, servants, and employes of defendant in charge of said engine were guilty of gross negligence, and of negligence in causing and permitting said engine to run upon plaintiff and hit him, and said agents and employes in charge of said engine either knew or could have known by the use of ordinary prudence and diligence that plaintiff was upon said track, and was not likely to leave the same, and would be injured, in ample time to have stopped said engine with the appliances at their command and avoided hitting plaintiff; that defendant's agents, servants, and employes in charge of said engine were guilty of gross negligence and negligence in letting said engine hit plaintiff, because they knew or could have known by the use of ordinary care that plaintiff was on said track and was not likely to leave the same, and would be injured, in time to have stopped said engine by the use of the appliances at their command and to have avoided hitting plaintiff, and said agents and employes in charge of said engine that hit plaintiff knew, or could have known by the use of ordinary care, that plaintiff was upon said track, in ample

time to have warned plaintiff, by blowing the whistle of said engine, ringing the bell of said engine, or otherwise, so as to have given plaintiff ample time to have left said track and avoided injury, and that plaintiff could and would have left said track in ample time to have avoided being injured if the agents and servants of defendant in charge of said engine had notified plaintiff by the ringing of the bell or blowing the whistle of said engine, or otherwise, of its approach."

There is a marked distinction between this alternative allegation and the plain, specific, affirmative averment required under well settled rules of pleading. If appellee was upon a part of the track in common use, and the operatives of the engine, by the exercise of ordinary care, could have known of appellee's peril in time to have avoided the injury, and failed to do so, then they were guilty of negligence for which appellant would be liable, unless such liability was defeated by the contributory negligence of appellee, as held by this court in Railway v. Harby, 28 Texas Civil Appeals, 24, 67 Southwestern Reporter, 541. But if said operatives actually discovered such perilous position, and thereafter were guilty of negligence, whereby appellee was injured, then appellant would be liable, notwithstanding appellee's contributory negligence, if any.

It has been held that this issue must be presented by affirmative averments, and it needs no citation of authority for the statement that such averments should be plain and distinct, to the end that the opposing litigant may know the precise issue he is called upon to meet. Inasmuch, however, as no exception seems to have been taken to the pleading on this ground, and that after verdict the rule is to construe the pleading most strongly in favor of the successful party, we have concluded that it is perhaps our duty to consider the evidence, and to determine whether the verdict can be sustained on this ground. This we have carefully done, and our conviction is against the proposition. No witness testifies that appellee was discovered upon the track until after he was struck. The engineer, fireman, and conductor, who were on the engine, all testify positively that they did not. The evidence relied upon as tending to show that they did is that of the operatives, to the effect that the track was straight, and that they saw approaching them from the south a hand car and section men, some 300 or 400 yards away. Whether this observation was taken after the engine left the depot and before appellee got upon the track, does not appear. The engineer also testifies that he was upon the right hand side of the engine after leaving the depot, some 400 feet to the north, with his eye on the rail, looking out for obstructions. The conductor testifies that he was standing in the gangway behind the engineer, also keeping a lookout. The fireman a part of the time was engaged in putting in coal. These parties and others all testify that the whistle was blown and the bell kept ringing, though this was denied by appellee and two other witnesses. It may be conceded that the evidence shows that the operatives were guilty of negligence in failing to see appellee upon the track, and in failing to

give proper signals, and if it be further conceded that some of the operatives might possibly have seen appellee upon the track, yet this is not sufficient. Did they see him at a time and under circumstances enabling them to avoid the injury, and were they guilty of negligence in failing to do so? It is well established that it must reasonably appear to those operating the engine that the person on the track is in actual peril in time to avoid injuring him. See Railway v. Shetter, 94 Texas, 199, and authorities therein cited; Railway v. Smith, 62 Texas, 254; Railway v. Hewitt, 67 Texas, 480; Artusy v. Railway, 73 Texas, 194; Railway v. Garza, 75 Texas, 589; Railway v. Kieff, 94 Texas, 334; Railway v. Haltom, 95 Texas, 112, 3 Texas Ct. Rep., 540.

Appellee testified that he walked down the track about sixty feet, going in a brisk walk, say at rate of five miles per hour. One of appellee's witnesses testified that the approaching engine was going at the rate of twenty miles per hour. Other witnesses gave the speed at from six to twelve miles per hour. A mathematical calculation will plainly indicate, if not demonstrate, that appellee could not have been upon the track before being struck but a very few seconds, and that at any rate of speed given the engine by the various witnesses it was within less than 200 feet of appellee at the very moment he got upon the track. Even if it be assumed that the whistle was not blown and that the bell was not rung, neither appellee nor any other witness testifies to any circumstance that would have indicated to those on the engine that he had not seen or heard the nearby approaching engine, and in the present state of the record, and with the conviction that the issue was not clearly presented and contested, we feel unwilling to affirm the judgment below upon the theory that the evidence sufficiently shows that within the brief period that appellee was upon the track the operatives upon the engine not only discovered him, but also discovered that he was unaware of the approaching engine in time to have avoided the injury, notwithstanding which they, in effect, deliberately run him down, a proposition, in our judgment, strongly refuted by a proper consideration of the ordinary impulses of humanity in the Christian civilization of the present age.

The motion for rehearing is overruled.

                                                    *Overruled.*

HUNTER, ASSOCIATE JUSTICE (Dissenting).—I am not satisfied with the conclusions we reached in this case on the original hearing, and feel constrained, upon full argument of this motion by appellee's counsel, to withdraw my consent to the opinion filed herein, for the following reasons:

First. I have concluded that, upon a careful consideration of the evidence, the learned district judge would not have been justified in charging the jury to find for appellant for the reason that the evidence established that appellee was guilty of contributory negligence; and having submitted the question fully and fairly to the jury, there was

sufficient evidence to support their finding that he was not guilty of contributory negligence in going and walking upon the track at the time, place, and in the manner he did. I think the evidence justified them in the conclusion that an ordinarily prudent man might have done as he did under the same or similar circumstances. And while we may have the power and authority to determine these questions of fact according to the manifest weight and preponderance of the evidence, non obstante veridicto (Railway v. Choate, 91 Texas, 410, and 90 Texas, 88), yet I think we should not exercise such power except in cases where it is clear that the jury have evidently misunderstood the facts, or for some other cause manifest injustice has been done.

Second. But conceding that the jury might have reached the conclusion that the appellee was guilty of contributory negligence in going and walking upon the track, yet the evidence, in my opinion, sustains the verdict, because it is sufficient to prove that the place where the injury occurred was one commonly used by the public with the knowledge and acquiescence of appellant, and this fact required the employes of appellant in charge of the engine to keep a lookout ahead at this place; and, as the track was straight for a quarter of a mile, and those in charge of the engine admit that they saw a hand car with men on it about a quarter of a mile beyond appellee on the same track, the jury had the right to infer, even against their evidence, that the enginemen saw the appellee on the track and in imminent peril in time to have stopped the engine or warned appellee of its approach by signals, and thus have averted the injury.

I therefore feel constrained to withdraw my approval of our decision in this case, and now think the judgment ought to be affirmed.

Writ of error refused.